(120 So. 626)

No. 29679.

**STATE v. SKEAHAN.**

Jan. 28, 1929.

Robert M. McGehee, of Hammond, for appellant.

Percy Saint, Atty. Gen., A. L. Ponder, Jr., Dist. Atty., of Amite, and E. R. Schowalter, Asst. Atty. Gen., for the State.

LAND, J. Walter Skeahan and John Dunnington, Jr., were jointly indicted for the robbery of John Lee of $40 and a watch of the value of $50. A third party was implicated in the crime, but was not indicted, as he could not be identified. Dunnington fled from justice, and the defendant Skeahan was placed on trial, and was convicted and sentenced to a term of not less than three nor more than nine years in the state penitentiary.

Five bills of exception were reserved on the trial of the case.

### Bill No. 1.

It appears from the per curiams to these bills that John Lee and his wife, Emma Lee, owned and operated a store or restaurant in Hammond, La., and that on the 27th day of May, 1928, three men entered the place of business, and committed the robbery as charged in the indictment.

John Lee, the prosecuting witness, said, in detailing what occurred at the time of the robbery on direct examination: "Well, gentlemen, if you all think I've got something to drink here, there is no bar; go behind the counter and search. He did. This little man he searched behind the counter. He searched the ice-cream freezer. I had some perfumery there, and he searched among that too. He went on and searched where I kept my pop. The next middle-sized man, he was in the back, in the kitchen, searching in the bread box. He came out with the bread knife; just as he came in with the bread knife this young man walked up and said to me: 'You got money?' I said: 'Yes, I got a few dollars.' He said: 'Dig it up.' I reached in my pocket and pulled out $3.00 in change and handed it to him. He said: 'Oh! Hell! You've got more money than that.' He reached in my pocket, and pulled out some money, and reached in my shirt and took out some money. Dunnington said: 'What kind of watch you've got?' "

Counsel for defendant objected to the last question on the grounds that the defendant, Skeahan, was never identified by this witness; that the only one he identified was a notorious bandit (John Dunnington, Jr.), who was a fugitive from justice, and the injection of his name into the case could have no other effect than to influence and prejudice the minds of the jury against the defendant, Skeahan.

The objection is without merit, as the three men were present, aiding and abetting each other in the commission of the robbery. Until the conspiracy is finally closed, the declarations and acts of the parties in execution of the common design are admissible in evidence against any or all of those engaged in the conspiracy, since the act or declaration of one is imputed by law to all. State v. Buchanan, 35 La. Ann. 89; State v. Bolden, 109 La. 485, 487, 33 So. 571; Wharton, Crim. Law, vol. 2 (2d Ed.) § 1672; 1 Bish. New Crim. Law, § 629(2).

Besides, the trial judge cannot control the district attorney as to the order in which he must adduce the state's evidence in a criminal prosecution. Before the trial ended, the defendant, Skeahan, was fully identified by Emma Lee, the wife of John Lee, who was present at the time her husband was robbed.

The state witness Lee answered the question, "What kind of watch you've got?" He continued as follows: "Dunnington pulled my watch out and put it in his pocket. This young man pulled the money out of my shirt. He slapped me in the face, and rushed

out, and started his machine, his car. When he got his machine to going good, one of the men, Dunnington, threw a glass at my head, and it hit the wall and broke in pieces. When they chunked the glass and it hit the wall, it made a lot of noise. Boom! Like that, like it was a shot, and it scared me. I thought it was a shot. This young man was in the car all ready to go."

This testimony was objected to by counsel for defendant, for the reason that the witness had not identified Skeahan, the defendant on trial, as being one of the three robbers.

The throwing of the glass was clearly a part of the conspiracy, and was intended to frighten and intimidate the state witness Lee, in order to prevent an immediate outcry and pursuit of the fleeing bandits. The testimony was properly admitted for the reasons already stated in this opinion.

### Bill No. 2.

On redirect examination, the district attorney asked the state witness Lee the question: "You say John Dunnington was with the accused. What Dunnington is that?"

This question was objected to on the ground that John Dunnington was not before the court, and the testimony implicated him only. The objection was overruled, and the witness answered that he meant John Dunnington, Jr., who was indicted in the present case with Skeahan.

The state unquestionably had the right to identify John Dunnington, Jr., as the party with the defendant, at the time of the robbery, as John Dunnington, Sr., was sitting in the courtroom, and also to bring out the fact that John Dunnington, Jr., was the brother-in-law of the accused.

### Bill No. 3.

The state witness Emma Lee, wife of the prosecuting witness John Lee, was asked by the district attorney the following question on direct examination:

"Q. Go ahead, and tell the jury what happened? A. (Exhibiting fragments of glass to the jury.) That's the pieces of glass he chunked at my husband. When he did it made so much noise when it hit the wall that I thought he had shot him, from the noise it made."

Counsel for defendant objected to this answer, on the ground that the glass had not been in the custody of the court and, if connected with the case, that the direct testimony of the prosecuting witness John Lee showed that the only person that was positively identified with the crime, John Dunnington, Jr., threw the glass at him, and not the accused, Skeahan.

The objection is frivolous, since an object, to be admissible in evidence, does not have to be in the custody of the court. As all three of the parties present at the robbery were acting together, the act of one was the act of all, and the fact that John Dunnington, Jr., threw the glass, was admissible in evidence against defendant Skeahan.

### Bill No. 4.

In the course of his opening argument to the jury, the district attorney said: "Where is John Dunnington? I do not know where John Dunnington is; but from the evidence—" At this point, counsel for the defendant objected to any reference to John Dunnington, Jr., as he was not on trial, and on the further ground that Dunnington was the only person who was positively identified by the prosecuting witness, and the injection of his name, with his criminal record in the parish of Tangipahoa, operated greatly to the prejudice of the defendant, Skeahan, then on trial.

We find from the per curiam to bill No. 5 that there was no evidence before the jury as to the criminal record of John Dunning-

ton, Jr., and no mention of him in the case, except in connection with the circumstances of the robbery, committed by the three men, two of whom were identified as the accused and Dunnington.

In the per curiam to bill No. 4, now under consideration, it is stated by the trial judge that: "The remarks of the District Attorney were leveled at the fact that Skeahan attempted to prove on the night of the robbery that he was at the home of Dunnington, his brother-in-law, and it was argued that he should have placed Dunnington on the stand to prove this."

Under the circumstances of the case, we find no prejudice resulting to the accused from the remarks of the district attorney before the jury.

Bill No. 5.

This bill was reserved to the overruling of a motion for a new trial on the ground that the verdict was contrary to the law and the evidence.

The complaint in the motion for a new trial that the state witnesses failed to identify the accused is a question of fact for the jury.

The further complaint in the motion that the jury ignored the alibi, although established by credible witnesses, presents also a question of fact to be determined by the jury.

In the per curiam to this bill, the trial judge states that the identification of the accused by Emma Lee, the wife of John Lee, the prosecuting witness, was complete and positive. He further states that the testimony relative to the alibi was properly rejected, as the home of Dunnington, at which accused claimed to have been, was but six or seven miles from Hammond, the scene of the robbery, and by gravel road, and that it would have taken less than 15 minutes to have made the trip each way.

The conviction and sentence are affirmed.